Eastern District of Kentucky
**F I L E D**

JAN 2 4 2020

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## COVINGTON

**CRIMINAL ACTION NO. 19-69-DCR**

**UNITED STATES OF AMERICA**                                   **PLAINTIFF**


**V.**                                **PLEA AGREEMENT**


**JOSEPH SHOCKEY**                                        **DEFENDANT**

\*   \*   \*   \*   \*

1.      Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to the Indictment, which charges Bank Fraud, in violation of 18 U.S.C. § 1344.

2.      The essential elements of Count 1 are:

(a)    That the Defendant knowingly executed a scheme to defraud, that is, a scheme to deceive a bank and to deprive it of something of value;

(b)    That the scheme related to the concealment of a material fact;

(c)    That the Defendant had the intent to deceive the bank and to deprive it of something of value; and

(d)    That the bank was federally insured.

3.      As to the Indictment, the Defendant agrees that United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) The Defendant was a shareholder, president and director of Republic Capital
Corporation, located in Walton, Kentucky. Republic Capital Corporation operated
as a dealer for used trucks and trailers.

(b) On or about October 1, 2014, the Defendant , on behalf of Republic Capital
Corporation, applied for and received a one-year line of credit in the principal
amount of approximately $500,000 from Stock Yards Bank and Trust Company
(Stock Yards).

(c) Stock Yards was insured by the Federal Deposit Insurance Corporation.

(d) Prior to receiving the line of credit, the Defendant executed loan documents
including a Promissory Note, a Business Loan Agreement and a Commercial
Guarantee. The debt was secured by assets owned by Republic Capital
Corporation, reflected in a Commercial Security Agreement and Commercial
Guaranty.  The Defendant personally guaranteed the line of credit and, in
executing the documents, he represented that no litigation, claim, investigation, or
administrative proceeding against him were pending or threatened, and no other
event had occurred which might materially adversely affect his financial condition
or properties, other than litigation claims, or other events, if any, that had been
disclosed to and acknowledged by the bank in writing. As demonstrated below,
this representation was false.

(e) The Defendant also agreed to promptly inform the bank in writing of (1) all
adverse changes in his financial condition, and (2) all existing and all threatened
litigation, claims, investigations, administrative proceedings, or similar actions
affecting him, which could materially affect his financial condition or that of any
guarantor.  Relying on these representations by the Defendant, the bank extended a
line of credit in the original principal amount of approximately $500,000.

(f) On or about November 12, 2014, a Civil Complaint for damages was filed in the
Third Judicial District Court for Salt Lake County, State of Utah, against the
Defendant individually and against Republic Capital Corporation.  The Complaint
alleged he committed Fraud, Embezzlement and Breach of Contract in relation to
a loan in the amount of $507,000, plus interest, which the Defendant received
from the Plaintiff, a Utah citizen.

(g) On or about January 1, 2015, the Defendant submitted a Personal Financial
Statement as required by the bank.

(h) On or about April 13, 2015, a Default Judgment was entered in the Utah case
against the Defendant, individually, and against his business, Republic Capital
Corporation, in the amount of $579,063, plus interest.

(i) A Judgment Lien was recognized and recorded in the Circuit Court of Kenton County, Kentucky on or about May 21, 2015, in the amount of $579,428, plus interest.

(j) To induce Stock Yards to give or continue financial accommodation, the Defendant was required to execute Personal Financial Statements periodically warranting a true statement of his continuing financial condition. He submitted a Personal Financial Statement on January 1, 2015. The statement required the Defendant, in part, to identify his liabilities, and to indicate whether he was a defendant in any suits or legal actions. On the statement, the Defendant failed to disclose that he was a Defendant in the Utah civil action for damages.

(k) On or about October 28, 2015, the Defendant executed loan documents seeking to extend the line of credit to January 1, 2016.

(l) On or about November 23, 2015, in support of the extension, the Defendant submitted updated documentation, none of which gave notice to the bank of the Default Judgment, nor the amount thereof. Unaware of the Defendant's concealment of the Default Judgment and his debt of over $500,000, a fact material to the bank's decision to continue to extend the line of credit, the bank agreed to the extension. These documents were prepared, in part, at his business in Boone County, Kentucky.

On or about January 1, 2016, the Defendant executed loan documents seeking to extend the loan to January 1, 2017. In support of the extension, he submitted updated documentation, again none of which gave notice to the bank that a Default Judgment had been entered against him in the Utah case. He also submitted a Personal Financial Statement, which concealed the same in execution of the scheme. Unaware of the Defendant's continued concealment of the Default Judgment and his debt of approximately $579,428, plus interest, a fact material to the bank's decision to continue to extend the loan, the bank again agreed to the extension. By late December 5, 2016, the Defendant had defaulted on the bank loan and owed Stock Yards approximately $463,000.

(m) Stock Yards subsequently and independently discovered that the Defendant had concealed from the bank the fact that he was liable for the Utah judgment.

4.    The statutory punishment for Count 1 is not more than 30 years

imprisonment, a $1,000,000 fine, and 5 years supervised release. A mandatory special

assessment of $100 applies, and the Defendant will pay this assessment at sentencing.

3

5.     Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations.  This recommendation does not bind the Court.

(a)  United States Sentencing Guidelines (U.S.S.G.), November 1, 2018, manual, will determine the Defendant's guideline range.

(b)  Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct described in Paragraph 3 of this agreement.

(c)  Pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is 7.

(d)  Pursuant to U.S.S.G. § 2B1.1(b)(1)(G), the base offense level should be increased 12 levels because the loss amount is more than $250,000, but less than $550,000.

(e)  Pursuant to U.S.S.G. § 3E1.1, decrease the offense level for by 2 levels for the Defendant's acceptance of responsibility.  Since the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.  These reductions will not apply if the Defendant commits another crime, obstructs justice, violates this agreement, or violates a court order.

(f)  The parties agree, pursuant to U.S.S.G. § 5E1.1, that restitution is $449,496.07[1] and the victim is as follows:

Stock Yards Bank and Trust
Contact:
Kevin McCullough
Stock Yards Bank & Trust
101 West Fourth Street
Cincinnati, OH 45202
Office: 513-824-6144

---

[1] The amount of loss at the time of the detection of the fraud was approximately $463,000.  Restitution includes the principal and interest on that amount bringing the figure to approximately $553,000. After the offense was detected, however, the bank was able to offset its loss by recouping approximately 90,000, which had been deposited in early 2019 into one of the Defendant's checking accounts.  Thus, the final amount owed is $449,496.07.

6.      No agreement exists about the Defendant's criminal history category
pursuant to U.S.S.G. Chapter 4.

7.      The United States agrees that it will not seek to prosecute the Defendant for
Bankruptcy Fraud relating to his bankruptcy case filed in the Eastern District of
Kentucky, Case No. 16-21623-tnw.

8.      The Defendant reserves the right to argue for a downward variance,
however, the Government is free to oppose such motion. The United States agrees to
recommend a sentence at the low end of the guideline range contemplated by the
Guideline calculation herein, unless the Defendant commits another crime, obstructs
justice, violates this agreement, or violates a court order.

9.      The Defendant waives the right to appeal the guilty plea, conviction, and
sentence. Except for claims of ineffective assistance of counsel, the Defendant waives
the right to attack collaterally the guilty plea, conviction, and sentence.

10.     The United States will recommend releasing the Defendant on the current
conditions for future court appearances prior to sentencing, and to self-surrender if he is
sentenced to imprisonment, if the Defendant does not violate the terms of the order
setting conditions of release.

11.     The Defendant agrees to the imposition of a money judgment as set forth in
the Forfeiture Allegation of the Indictment in the amount of $449,496.07, which
represents proceeds obtained by the Defendant as a result of the offense charged in the
Indictment.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13.    The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum

6

schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

14.     If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

15.     This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16.     This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17.     The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

7

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: _1/24/20_            By: _~~~~~ for:_

Laura K. Voorhees
Assistant United States Attorney

Date: _1-24-20_

Joseph Shockey
Defendant

Date: _1-24-20_

Patrick J. Hanley
Attorney for Defendant

8